# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50604-2023

| | | |
|---|---|---|
| MICHAEL BOREN, an individual, | ) | |
| | ) | |
|    Plaintiff-Appellant-<br>Cross Respondent, | ) ) ) | Boise, August 2024 Term |
| | ) | |
| | ) | Opinion filed: December 6, 2024 |
| v. | ) | |
| | ) | Melanie Gagnepain, Clerk |
| GARY GADWA, an individual, | ) | |
| | ) | |
|    Defendant-Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SARAH C. MICHAEL, an individual, | ) | |
| | ) | |
|    Defendant-Respondent-<br>Cross Appellant, | ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| JON CONTI, an individual; RICHARD<br>DOUGLAS FOSBURY, an individual; DOES<br>1-20, | ) ) ) ) | |
| | ) | |
|    Defendants. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Custer County. Stevan H. Thompson, District Judge.

The decision of the district court is <u>affirmed in part</u>, <u>reversed in part</u>, and <u>remanded</u>.

Thomas Banducci P.C., Boise; Kirton McConkie, Boise; and Wagstaffe, von Loewenfeldt, Busch & Radwick LLP, San Franscisco, California (pro hac vice), for Appellant/Cross-Respondent Michael Boren. James M. Wagstaffe argued.

Bailey & Glasser LLP, Boise; and Foundation for Individual Rights & Expression, Washington, District of Columbia (pro hac vice), for Respondent Gary Gadwa. JT Morris argued.

Ferguson Durham, PLLC, Boise, for Respondent/Cross-Appellant Sarah Michael. Deborah A. Ferguson argued.

---

ZAHN, Justice.

Michael Boren appeals the district court's decisions dismissing his claims against Gary Gadwa and Sarah Michael and denying his motion to file a second amended complaint. Boren's complaint concerned events that occurred after he applied for a conditional use permit ("CUP") to have an unimproved airstrip on his property declared a designated county airstrip. Gadwa and Michael, along with other concerned citizens, actively opposed Boren's CUP application. Boren's CUP application was ultimately approved.

Following the approval of his CUP application, Boren sued Gadwa, Michael, and others for defamation, defamation per se, conspiracy to commit defamation, and declaratory relief, alleging that they made false statements regarding the nature of the airstrip and Boren's use of it. Boren filed an amended complaint and Gadwa and Michael moved to dismiss Boren's claims pursuant to Idaho Rule of Civil Procedure 12(b)(6), arguing that their statements were protected by the litigation privilege and were constitutionally protected petitioning activity. The district court agreed with Gadwa's and Michael's arguments and dismissed Boren's claims. Boren then moved to amend his complaint a second time, which the district court denied.

Boren appeals the district court's orders dismissing his claims against Gadwa and Michael and denying his motion to file a second amended complaint. For the reasons discussed below, we affirm the district court's decision dismissing Boren's claims in part and reverse it in part. We affirm the district court's decision dismissing Boren's civil conspiracy claim because Boren concedes it was properly dismissed. We also affirm the decision to dismiss Boren's declaratory judgment claim because a decision in Boren's favor would not terminate the uncertainty or controversy giving rise to the proceeding. However, we reverse the decision dismissing most of Boren's defamation claims because the applicability of the absolute litigation privilege and qualified litigation privilege to many of the allegedly defamatory statements is not evident on the face of Boren's complaint. Further, neither the First Amendment of the United States Constitution, nor Article I, section 10 of the Idaho Constitution provides absolute protection for defamatory statements made in the course of protected petitioning activity. We also reverse the district court's decision denying Boren's motion to amend because it was based on the erroneous analysis underlying the dismissal of the defamation claims.

2

# I. FACTUAL AND PROCEDURAL BACKGROUND

Boren appeals from the district court's decision dismissing his first amended complaint pursuant to Idaho Rule of Civil Procedure 12(b)(6). Given the procedural posture of the case, we accept as true all facts pleaded in the first amended complaint. *See Owsley v. Idaho Indus. Comm'n*, 141 Idaho 129, 136, 106 P.3d 455, 462 (2004). Boren owns Hell Roaring Ranch (the "Ranch"), a 480-acre cattle ranch located within the Sawtooth National Recreation Area ("SNRA"), south of Stanley, Idaho. The Ranch is encumbered by a federal scenic easement administered by the United States Forest Service. For years, Boren has occasionally used a grass area of his property as a runway to land small aircraft, which Boren asserts is an integral part of his ranch management plan. In February 2021, Boren filed a CUP application seeking a "permit for the grass area occasionally used as a runway on [the Ranch] to be offically [sic] recognized by Custer County as a designated county airstrip." Boren stated in his CUP application that there would be no material change in his use of the airstrip, that his use was within regulations, and that his CUP request was a "formality for insurance purposes." Following a public hearing, the Custer County Commissioners approved Boren's application and granted the CUP.

Boren asserts that Gadwa, Michael, and others formed an "opposition group," that viewed Boren's CUP application "as an opportunity to retroactively prohibit Boren's use of his pasture for landing his own aircraft[.]" Boren alleges that Gadwa, Michael, and other members of the opposition group created and disseminated a false narrative regarding his airstrip, including that (1) Boren could not legally land his aircraft on the Ranch; (2) Boren knew he could not legally land his aircraft at the Ranch but continued to do so; (3) Boren constructed an airstrip without obtaining necessary permits; and (4) Boren built the airstrip after telling government officials he was building an irrigation system. Boren alleges that Gadwa, Michael, and the opposition group's false statements continued after his CUP application was approved. He also asserts that, following the CUP approval, they published new defamatory statements, including a statement that the only reason Boren's CUP application was granted was because Boren unfairly and corruptly influenced Custer County officials.

Boren contends that this false narrative spread through the media and on the internet and was repeated by other members of the public that were unaware of the true facts. He asserts that because of the defamatory narrative, his reputation has been damaged, he and his family have

received death threats, and he was forced to spend far more money than was otherwise required to obtain CUP approval.

Following the approval of his CUP application, Boren filed a lawsuit in district court asserting claims against Gadwa, Michael, and others for defamation, defamation per se, conspiracy to commit defamation, and declaratory relief. He subsequently filed a first amended complaint. Michael filed a motion to dismiss the first amended complaint and a motion asking the district court to take judicial notice of documents related to the CUP proceedings. Michael argued that the allegedly defamatory statements identified in Boren's lawsuit were made in connection with the CUP proceedings and were therefore protected by the absolute litigation privilege. Gadwa later joined Michael's motion to dismiss.

The district court held a hearing on the motions and subsequently issued a written decision. The district court denied Michael's motion to take judicial notice, concluding that taking judicial notice of documents from the CUP proceedings would convert Michael's motion to dismiss to a motion for summary judgment. However, the district court concluded that Boren's first amended complaint incorporated the CUP-related documents by reference. The district court concluded that it could therefore consider the documents when evaluating the motions to dismiss.

The district court then turned to the merits of the motions to dismiss. The court first addressed the litigation privilege argument and concluded that the litigation privilege applied because each of the allegedly defamatory statements related to and was made in the course of the CUP process. The district court next determined that, even if the absolute litigation privilege did not apply, a qualified litigation privilege applied to any statements made in advance of hearings on the CUP application. The district court then addressed the constitutional arguments and held that the petitioning clause of the First Amendment protected all the allegedly defamatory statements, regardless of whether they occurred before, after or following the CUP hearings because each statement was "made during a petition of the government without any malice alleged." Finally, the district court dismissed Boren's remaining claims for conspiracy to commit defamation and for a declaratory judgment. The court concluded that the conspiracy claim was not an independent cause of action and that the declaratory judgment claim should be dismissed pursuant to Idaho Code section 10-1206 because the requested judgment "would not terminate the uncertainty or controversy" between the parties.

4

Boren then moved for leave to file a second amended complaint. After a hearing on the motion, the district court issued a written decision that denied the motion because the amendment would be futile. The court concluded that, even if the amendment were allowed, the court's analysis concerning the litigation privilege and constitutional protections for petitioning activity would result in the dismissal of the second amended complaint.

While the district court's decision resolved Boren's claims against Gadwa and Michael, other claims remained against other defendants. Boren moved the district court for entry of a final partial judgment pursuant to Idaho Rule of Civil Procedure 54(b) and to stay the remainder of the proceedings pending appeal pursuant to Idaho Appellate Rule 13.4(c)(1). The district court granted both motions and entered a final partial judgment as to Boren's claims against Gadwa and Michael. Boren timely appealed the district court's decisions dismissing his claims against Gadwa and Michael and denying his motion to file a second amended complaint.

Michael moved the district court for an award of her costs and attorney fees pursuant to Idaho Code section 12-121, which Boren opposed. The district court declined to award Michael her fees after concluding that Boren's claims presented a novel legal issue and as such, were not pursued frivolously, unreasonably or without foundation. Michael timely cross-appealed the decision denying her motion for an award of attorney fees.

## II. ISSUES ON APPEAL

1. Whether the district court erred in concluding that Boren's first amended complaint incorporated by reference the CUP documents offered by Michael.
2. Whether the district court erred in granting Gadwa's and Michael's motion to dismiss.
3. Whether the district court erred in denying Boren's motion for leave to file a second amended complaint.
4. Whether, in the event this Court reverses the district court's decisions, the district judge should be disqualified on remand.
5. Whether, in the event this Court affirms the district court, the district court erred in denying Michael's motion for attorney fees.
6. Whether Gadwa and Michael should be awarded attorney fees on appeal.

## III. STANDARDS OF REVIEW

"This Court reviews a district court's dismissal of a complaint pursuant to Idaho Rule of Civil Procedure 12(b)(6) *de novo*." *Geringer Cap. v. Taunton Props., LLC*, 172 Idaho 95, 100, 529 P.3d 760, 765 (2023) (citing *Fulfer v. Sorrento Lactalis, Inc.*, 171 Idaho 296, 300, 520 P.3d 708, 712 (2022)). "A 12(b)(6) motion looks only at the pleadings to determine whether a claim for relief

has been stated" and "this Court determines whether the non-movant has alleged sufficient facts in support of his claim, which if true, would entitle him to relief." *Fulfer*, 171 Idaho at 300, 520 P.3d at 712 (quoting *Hammer v. Ribi*, 162 Idaho 570, 573, 401 P.3d 148, 151 (2017)). "In doing so, the Court draws all reasonable inferences in favor of the non-moving party." *Hammer*, 162 Idaho at 573, 401 P.3d at 151 (quoting *Idaho Wool Growers Ass'n, Inc. v. State*, 154 Idaho 716, 720, 302 P.3d 341, 345 (2012)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gardner v. Hollifield*, 96 Idaho 609, 611, 533 P.2d 730, 732 (1975) (citations omitted).

This Court reviews a trial court's decision denying a motion to amend for an abuse of discretion. *Zeyen v. Pocatello/Chubbuck Sch. Dist. No. 25*, 165 Idaho 690, 694, 451 P.3d 25, 29 (2019) (citation omitted). To determine whether a court has abused its discretion, this Court asks "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted).

## IV.  ANALYSIS

**A. The district court erred in concluding that Boren's first amended complaint incorporated by reference the CUP documents.**

Michael moved the district court to take judicial notice of documents relating to the CUP proceeding. The district court denied the motion but concluded that it could consider those same documents because they were repeatedly discussed throughout the first amended complaint. Boren argues that the district court erred because his first amended complaint did not discuss the CUP proceedings or the documents at issue.

Gadwa and Michael filed motions to dismiss Boren's claims against them pursuant to Idaho Rule of Civil Procedure 12(b)(6). "A 12(b)(6) motion looks only at the pleadings to determine whether a claim for relief has been stated." *Bennett v. Bank of E. Or.*, 167 Idaho 481, 485, 472 P.3d 1125, 1129 (2020) (quoting *Taylor v. McNichols*, 149 Idaho 826, 833, 243 P.3d 642, 649 (2010)). If a 12(b)(6) movant relies on matters outside the pleadings and the trial court does not exclude them, then the motion must be treated as one for summary judgment. *Id.*; I.R.C.P. 12(d). However, where the additional documents are incorporated by reference in the complaint, the court

may generally consider those attachments when ruling on a 12(b)(6) motion without converting it to a summary judgment motion. *Bennett*, 167 Idaho at 485–86, 472 P.3d at 1129–30.

We have not explicitly addressed the standard of review we employ when reviewing a district court's decision that a complaint incorporated by reference documents that a party wishes to have considered in connection with a motion to dismiss. We touched on the issue in *Bennett* when we held that "where additional documents are incorporated by reference in the complaint, the general rule is that the court *may* consider those attachments when ruling on a 12(b)(6) motion." *Id.* (emphasis added). Our use of "may" suggests that the decision is a discretionary one and we have historically applied an abuse of discretion standard of review to such decisions. *See, e.g.*, *W. Cmty. Ins. Co. v. Burks Tractor Co.*, 164 Idaho 215, 218, 428 P.3d 793, 796 (2018) ("We review the discretionary decisions of a trial court for abuse of discretion."). The Ninth Circuit also employs an abuse of discretion standard when reviewing these decisions. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159–60 (9th Cir. 2012). As such, we will employ an abuse of discretion standard when reviewing the district court's decision to consider documents that it concludes are incorporated by reference in the governing complaint.

In this case, the district court concluded that the CUP-related documents provided by Michael were incorporated by reference because "the documents and the CUP process were repeatedly discussed in detail throughout" the first amended complaint. A review of the first amended complaint reveals otherwise. It is true that Boren's first amended complaint stated that "[t]his case arises out of the circumstances surrounding" the CUP proceedings. Boren also stated that he filed a CUP application, generally discussed his reasons for doing so, and mentioned that Gadwa and Michael actively opposed his application. While the first amended complaint described the allegedly defamatory statements made by Gadwa and Michael, it did not connect many of the statements to specific filings or specific hearings related to the CUP application. Rather, the first amended complaint specifically mentioned only two of the documents that the district court determined were incorporated by reference—Boren's CUP application and his notice of appeal from the Custer County Planning and Zoning Commission ("CCP&Z") decision granting his CUP application.

We hold that the district court did not err when it decided these two specifically referenced documents were incorporated by reference. However, the district court did err when it decided that the additional CUP-related documents were incorporated by reference. We have not identified, nor

has Michael or Gadwa cited us to, any decisions of this Court holding that a general reference to a proceeding is sufficient to incorporate by reference all documents related to that proceeding. Because Boren's first amended complaint did not specifically reference any documents aside from Boren's CUP application and appeal from the CCP&Z decision, the district court erred in considering the majority of the CUP-related documents on the basis that they were incorporated by reference in the first amended complaint. As such, for purposes of this opinion, we will consider only the documents specifically referenced in the complaint—Boren's CUP application and his notice of appeal from the CCP&Z decision.

**B. The district court erred in dismissing most of Boren's defamation allegations because the applicability of the litigation privilege is not evident from the face of the first amended complaint and the First Amendment's petitioning clause does not provide absolute immunity from defamation claims.**

*1. Anti-SLAPP act concepts do not apply to this case.*

The district court's written order identified three bases for dismissing Boren's defamation claims against Gadwa and Michael: (1) the absolute litigation privilege; (2) the qualified litigation privilege; and (3) the First Amendment's petitioning clause. Before we analyze the merits of that decision, we must initially address that portion of the district court's decision discussing anti-SLAPP act concepts. A SLAPP suit is a "strategic lawsuit against public participation" intended "to stifle those who protest against some type of high-dollar initiative or who take an adverse position on a public-interest issue (often involving the environment)." *SLAPP*, Black's Law Dictionary (12th ed. 2024). While it does not appear that the district court dismissed Boren's case on that basis, it seems to suggest that anti-SLAPP act principles were applicable to Boren's defamation claims. We therefore take this opportunity to make clear that this is not a SLAPP act case. The Idaho Legislature has not passed an anti-SLAPP act. In fact, the Idaho Senate recently rejected anti-SLAPP act legislation. S.B. 1325, 67th Leg., 2d Reg. Sess. (Idaho 2024). Anti-SLAPP acts are a purely legislative creation. Neither the district court, nor Gadwa and Michael, have provided any common law authority to the contrary. As a result, anti-SLAPP act concepts do not apply to this case.

*2. Boren adequately pleaded claims for defamation and defamation per se.*

Given the inapplicability of anti-SLAPP act concepts, the district court was bound to decide Gadwa's and Michael's motions to dismiss in accordance with Idaho Rule of Civil Procedure 12(b)(6) and applicable caselaw. Their motions were grounded in two affirmative defenses: the

8

litigation privilege and the First Amendment's petitioning clause. The district court therefore bypassed whether Boren properly pleaded the elements of his defamation claims and instead focused its analysis on the affirmative defenses raised in the motions. On appeal, Gadwa and Michael have argued that, even if the district court erred in granting their motions on the basis of those affirmative defenses, we should affirm its decision on the alternate ground that Boren failed to properly plead the elements of defamation and defamation per se. Boren maintains that the allegations in his first amended complaint meet Idaho's pleading requirements. Because there is no need to address the affirmative defenses if Boren failed to plead the elements of his defamation claims, we begin our analysis there.

"[T]he focus of [the pleading] standard is to provide notice to the opposing party of the claims presented, rather than a detailed legal analysis[.]" *Fulfer v. Sorrento Lactalis, Inc.*, 171 Idaho 296, 300–01, 520 P.3d 708, 712–13 (2022) (citation omitted). Therefore, "[t]he key issue in determining the validity of a complaint is whether the adverse party is put on notice of the claims brought against it." *Id.* at 301, 520 P.3d at 713 (citation omitted). "A complaint must merely state claims upon which relief may be granted, and pleadings should be liberally construed . . . ." *Brown v. City of Pocatello*, 148 Idaho 802, 807, 229 P.3d 1164, 1169 (2010). "On review of a dismissal this Court determines whether the non-movant has alleged sufficient facts in support of his claim, which if true, would entitle him to relief." *Williamson v. Ada County*, 170 Idaho 204, 209, 509 P.3d 1133, 1138 (2022) (citation omitted). In doing so, this Court assumes the truth of all nonconclusory allegations and construes reasonable inferences in favor of the nonmoving party. *See id.* (citation omitted).

Idaho Rule of Civil Procedure 8(a) sets forth the pleading standard in Idaho, providing that litigants must provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" I.R.C.P. 8(a)(2). Rule 9 addresses additional pleading requirements for "special matters." I.R.C.P. 9. Relevant here, Rule 9(i) states that "[i]n an action for libel or slander it is sufficient to state, generally, the defamatory matter that was published or spoken concerning the plaintiff." I.R.C.P. 9(i). Taken together, Rules 8 and 9 provide that, when pleading claims for defamation, a litigant must only plead a short and plain statement of the claim that demonstrates he is entitled to relief and generally describes the defamatory matter that was published or spoken. *See* I.R.C.P. 8(a)(2), 9(i).

To demonstrate a right to relief in an action for defamation, a plaintiff must establish "that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication." *Elliott v. Murdock*, 161 Idaho 281, 287, 385 P.3d 459, 465 (2016) (citation omitted). "A defamatory statement is one that 'tend[s] to harm a person's reputation, [usually] by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business.'" *Id.* (alterations in original) (quoting *Defamatory*, Black's Law Dictionary (10th ed. 2014)). "To determine whether a statement is defamatory, the assertion 'must be read and construed as a whole; the words used are to be given their common and usually accepted meaning and are to be read and interpreted as they would be read and understood by the persons to whom they are published.'" *Siercke v. Siercke*, 167 Idaho 709, 718, 476 P.3d 376, 385 (2020) (quoting *Gough v. Tribune-Journal Co.*, 75 Idaho 502, 508, 275 P.2d 663, 666 (1954)).

To demonstrate a right to relief in an action for defamation per se, a plaintiff must establish that the defendant: (1) communicated information concerning the plaintiff to others; and (2) the statement imputed criminal conduct to the plaintiff which, if committed in the place of publication, would be punishable by imprisonment in a state or federal institution, or would be regarded by public opinion as involving a crime of moral turpitude. *Id.* at 719–20, 476 P.3d at 386–87 (citation omitted). "[M]oral turpitude is 'in general shameful wickedness so extreme a departure from ordinary standards of honesty, good morals, justice or ethics as to be shocking to the moral sense of the community.'" *Id.* (quoting Restatement (Second) of Torts § 571 cmt. g (1977)). "[W]hether a crime is one of moral turpitude is a question best left to the jury in most instances." *Id.* "Statements that rise to the level of defamation per se do not require proving special damages." *Id.* at 718, 476 P.3d at 385 (citation omitted).

In this case, Boren alleged in his first amended complaint that Gadwa and Michael disseminated the following disparaging statements to others:

(1) That Boren's "use of his pasture as a landing area for his aircraft [was] unlawful";

(2) That Boren "illegally 'built' an 'airstrip' or 'airport' on his property";

(3) That Boren "needed Custer County or United States Forest Service . . . permission to land his aircraft on his ranch pasture";

(4) That Boren "had no right to land his aircraft on his property" (emphasis omitted);

10

(5) That Boren "knowingly ignored the law when he used his pasture as a landing area for his aircraft";

(6) That Boren " 'lied' to local, state and federal authorities" and said he was building an irrigation system "so that he could hide his allegedly illegal activities";

(7) That Boren's "fuel storage violated the Clean Water Act";

(8) That Boren was violating the Endangered Species Act;

(9) That Boren "failed to obtain the necessary permitting for his septic system";

(10) That Custer County could not make a decision on Boren's CUP application without first receiving a CUP compliance review from the United States Forest Service; and

(11) That the only reason Boren's application was approved was because he "unfairly and corruptly influenced Custer County officials[.]"

Boren alleged that the defamatory statements impugned his honesty, integrity, virtue, and reputation as a rancher and falsely accused him of committing a crime of moral turpitude. Boren further alleged that journalists repeated the statements and sentiments in their reporting. Boren contended that another defendant, who is not a party to this appeal, made an online video attacking Boren, and the video was a direct consequence of the above statements. Boren alleges that, as a result of the above statements, he and his family have received death threats and have become the subjects of ridicule within the community and the state.

We hold that, for purposes of Rule 12(b)(6), the allegations in the first amended complaint state a claim for defamation. Many of the statements assert that Boren committed crimes or violated regulations. Others allege that Boren lied to government officials. Boren has alleged that the statements subjected him to ridicule and death threats and harmed his reputation. With the exception of statement (10) above, the allegations are sufficient to state a claim for defamation.

We conclude that statement (10) is not defamatory because it does not impute any conduct to Boren and therefore cannot harm his reputation. *See Elliott*, 161 Idaho at 287–88, 385 P.3d at 465–66.

We also hold that the statements, with the exception of statement (10), state a claim for defamation per se. Several of the remaining statements impute criminal conduct to Boren, which could result in imprisonment. We take care to note that our decision today holds only that Boren's allegations are sufficient on their face to state claims for defamation and defamation per se and takes no position on the merits of those claims.

11

Gadwa and Michael argue that the first amended complaint failed to state a claim because it alleged that Gadwa, Michael, and others made the referenced statements. They allege that Boren's failure to specifically identify which statements were made by which defendants failed to adequately put them on notice of the allegations against them. This argument is unpersuasive. Boren attributed each of the defamatory statements to each of the individual defendants, which was sufficient to put all the defendants on notice that Boren was alleging they each published the statements. The Idaho Rules of Civil Procedure require only a short and plain statement of the claim and a general statement of the defamatory matter. I.R.C.P. 8(a)(2), 9(i). The rules do not require Boren to plead defamation with specificity. We therefore conclude that Boren's allegations were sufficient, for purposes of Rule 12(b)(6), to state claims for defamation and defamation per se.

3. *The applicability of the absolute litigation privilege is not apparent on the face of the first amended complaint.*

The district court concluded that the absolute litigation privilege applied to all of Gadwa's and Michael's allegedly defamatory statements because it was clear from the first amended complaint that they were relevant to and made in the course of the CUP proceedings.

Boren argues that the district court's decision is flawed in several respects. First, Boren argues that the district court should not have addressed the litigation privilege affirmative defense because it does not appear on the face of his first amended complaint. Boren next argues that the applicability of the absolute litigation privilege presented factual questions that should have been resolved by a jury. Finally, Boren argues that the district court applied the privilege too broadly. Gadwa and Michael argue that the privilege applies because everything alleged in the first amended complaint stems from the CUP proceedings.

"A complaint is subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on the face of the complaint itself." *Gardner v. Hollifield*, 96 Idaho 609, 611, 533 P.2d 730, 732 (1975) (citations omitted). Thus, in this case the applicability of the absolute litigation privilege turns on whether the allegations in the first amended complaint are sufficient to establish that the statements at issue meet the requirements of the privilege.

The absolute litigation privilege applies when "(1) the defamatory statement was made in the course of a proceeding and (2) it had a reasonable relation to the cause of action of that proceeding." *Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.*, 164 Idaho 699, 678, 434 P.3d 1275, 1284 (2019) (internal quotation marks and alteration omitted) (quoting *Weitz v. Green*, 148 Idaho

12

851, 862, 230 P.3d 743, 754 (2010)). The term "judicial proceeding" includes proceedings "of a judicial nature before a court or official clothed with judicial or quasi-judicial power." *Richeson v. Kessler*, 73 Idaho 548, 551, 255 P.2d 707, 709 (1953). A statement does not have to be spoken in open court or contained in a pleading, brief or affidavit for the privilege to apply. *Id.*

Here, Boren's first amended complaint specifically alleged that defamatory statements were made in one stage of the CUP proceedings: the opposition group's notice of appeal and motion for reconsideration of the CCP&Z's findings of fact concerning Boren's CUP application. Boren alleged that Gadwa and Michael were members of the opposition group and that they should be deemed liable for defamatory statements made in the notice of appeal. At oral argument, Boren's counsel conceded that the allegedly defamatory statements contained in the notice of appeal of the CCP&Z's decision were protected by the absolute litigation privilege. We therefore affirm that portion of the district court's decision dismissing Boren's defamation claims against Gadwa and Michael resulting from the following statements contained in the notice of appeal: that Boren's fuel storage violated the Clean Water Act; that Boren was in violation of the Endangered Species Act; and that Boren had failed to obtain the necessary permitting for his septic system.

However, we reverse that portion of the district court's decision dismissing Boren's defamation claims concerning the two other allegedly defamatory statements: that Boren's pasture landing area violated FAA regulations, and that Boren misrepresented the construction of an airport or airstrip on his property as pasture improvements. It is unclear from the face of the first amended complaint whether these two statements were solely made in the notice of appeal or if they were also made on another date via other means. The first amended complaint alleges in two separate paragraphs that Gadwa and Michael falsely stated that Boren had no right to land his aircraft on his property and that he misled government officials to believe he was constructing irrigation improvements on his pasture. Only one of these paragraphs claims the statements were made in the notice of appeal. Because it is unclear from the face of the complaint whether Boren is alleging these statements were only made in the notice of appeal, we reverse the district court's decision dismissing the defamation claims related to those two statements.

We also reverse that portion of the district court's decision dismissing Boren's defamation claims concerning other allegedly defamatory statements that were not contained in the notice of appeal. The district court concluded that some of the statements were protected by the absolute privilege because they were made during public hearings on the CUP application and that the first

13

amended complaint established that the rest were "related to and in the course of the CUP process." We find nothing in the first amended complaint that supports either assertion. The first amended complaint does not allege that any of the defamatory statements were made in the course of public hearings on the CUP application or in the course of CUP proceedings. Aside from the allegations related to statements made in the notice of appeal of the CCP&Z's decision, it is not clear from the first amended complaint that the allegedly defamatory statements related to the CUP proceedings or that they were made in the course of the CUP proceedings. As a result, it is not clear from the face of the first amended complaint that the statements were protected by the absolute litigation privilege. We therefore hold that the district court erred in dismissing Boren's defamation claims related to allegedly defamatory statements made outside of the notice of appeal.

4. *The applicability of the qualified litigation privilege is not apparent on the face of the first amended complaint.*

The district court alternatively ruled that, even if the absolute litigation privilege did not apply to Boren's defamation claims, a qualified litigation privilege would apply. The district court's written decision contained scant analysis on this point. The district court concluded that the qualified litigation privilege applied because Boren failed to allege malice. Boren argues that the district court erred because the qualified litigation privilege does not appear on the face of the first amended complaint; it is not applicable to his claims; and he alleged malice and bad faith, which defeats the qualified privilege. Gadwa and Michael argue that the qualified privilege applies here because the allegedly defamatory statements were made to people with a common interest in preserving the Sawtooth National Recreational Area ("SNRA") and because Boren failed to allege malice. We agree with Boren's first point and hold that the district court erred because the applicability of the qualified litigation privilege is not apparent on the face of the first amended complaint.

There are significant differences between the absolute litigation privilege and the qualified litigation privilege. The absolute privilege is more akin to an immunity "because it adheres by virtue of the status of the speaker." *Siercke v. Siercke*, 167 Idaho 709, 716, 476 P.3d 376, 383 (2020). The absolute privilege is based on the recognition that "certain persons, because of their special position or status, shall be as free as possible from fear that their actions in that position may have an adverse effect upon their own personal interests." *Gardner*, 96 Idaho at 613, 533 P.2d at 734 (quoting Restatement (Second) of Torts § 895D (Am. L. Inst. Tentative Draft No. 20, 1974)).

14

The qualified privilege does not depend on the status of the speaker, but instead "arise[s] out of the particular occasion upon which the defamation is published." *Id.* (citation omitted). It is "based upon a public policy which recognizes that it is desirable that true information shall be given whenever it is reasonably necessary for the protection of the [speaker]'s own interests, the interests of a third person, or certain interests of the public." *Id.* (citation omitted). A qualified privilege balances the interests of the defamed person in the protection of his reputation against the interests of the publisher, third persons, and the public in having the publication take place. Restatement (Second) of Torts § 593 cmt. c (2024 update). The latter interests are not strong enough under the circumstances to create an absolute privilege but are sufficiently important to relax the usual liability standards for defamation. *Id.* However, the qualified privilege is lost if abused. *Siercke*, 167 Idaho at 718, 476 P.3d at 385 (citation omitted).

In its written order dismissing Boren's claims, the district court offered no explanation for its conclusion that a qualified privilege applied to the allegedly defamatory statements. Whether a given set of facts constitutes a privileged occasion for purposes of a qualified privilege is a question of law to be determined by the court. *Id.* at 716, 476 P.3d at 383. "This Court applies a de novo standard of review to questions of law." *Worthington v. Crazy Thunder*, 173 Idaho 262, 266–67, 541 P.3d 694, 698–99 (2024) (quoting *Siercke*, 167 Idaho at 713, 476 P.3d at 380). On appeal, Gadwa and Michael argue that a qualified privilege should apply because the allegedly defamatory statements were made to those "with a common interest in the use and welfare of the SNRA." However, they do not cite any portions of the first amended complaint supporting their assertion. The first amended complaint alleges that the reason for Gadwa's and Michael's opposition had little to do with Boren's CUP application but was instead about retroactively prohibiting Boren from landing his aircraft in his pasture. The complaint also alleges that Boren's pasture is located within the SNRA. However, the first amended complaint does not allege that the statements were made with a common interest in the use and welfare of the SNRA. In short, the face of the first amended complaint does not establish that the statements were made for the reasons claimed and the district court erred in concluding that a qualified litigation privilege applied.

Our decision today should not be construed as a determination that a qualified privilege does not apply in this case. Rather, our decision today holds only that the face of the first amended complaint did not establish grounds to apply a qualified privilege at the motion to dismiss stage.

15

5. *There is no absolute protection for defamatory statements made in the course of petitioning activity.*

The district court also concluded that Boren's defamation claims should be dismissed because the conduct at issue was petitioning activity protected by the First Amendment to the United States Constitution. At a subsequent hearing on Boren's motion to reconsider, the district court suggested that the Idaho Constitution also provided immunity for any statements made in the course of petitioning activity. Boren argues that the First Amendment does not grant an absolute immunity to defame others, and that defamation is not protected speech under the First Amendment. He also argues that Article I, section 10 of the Idaho Constitution does not provide any greater protections for petitioning activity than the First Amendment. Gadwa and Michael argue that the statements constituted protected petitioning activity under the First Amendment and that the *Noerr-Pennington* doctrine provides absolute immunity against allegations of defamation in the course of petitioning activity. Gadwa and Michael also assert that the district court correctly concluded that the Idaho Constitution absolutely protects statements made in the course of petitioning activity.

The United States Supreme Court held that there is no absolute immunity from a common law claim of defamation for statements made in the course of constitutionally protected petitioning activity. *McDonald v. Smith*, 472 U.S. 479, 485 (1985). There, the Supreme Court considered whether allegedly defamatory statements made in letters to President Reagan were absolutely protected by the Petition Clause *Id*. at 480. The Supreme Court held that they were not and confirmed that there is no greater constitutional protection afforded to petitioning activity than to other forms of First Amendment expression. *Id.* at 485 ("To accept petitioner's claim of absolute immunity would elevate the Petition Clause to special First Amendment status."). Accordingly, any immunity for statements made while allegedly petitioning the government is not absolute. *See id.*

"Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citing *Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005)). In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, trucking companies sued railroad companies, arguing that their association to petition the government about a law related to monopolies violated the Sherman Act. 365 U.S. 127, 129 (1961). The Supreme Court held that the Sherman Act did not

16

prevent the railroad companies from associating to petition government officials to take particular action on a law. *Id.* at 136–37. The Supreme Court later held that the doctrine applied with full force in other statutory contexts. *See BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002). In light of these precedents, the Ninth Circuit has concluded that the *Noerr-Pennington* doctrine "stands for a generic rule of statutory construction, applicable to any *statutory interpretation* that could implicate the rights protected by the Petition Clause." *Sosa*, 437 F.3d at 931 (emphasis added).

Gadwa and Michael urge us to extend the *Noerr-Pennington* doctrine to common law claims for defamation. They support their argument with citations to three cases from our sister states. However, the majority of federal and state courts that have addressed this issue have declined to extend *Noerr-Pennington* immunity to common law defamation claims. *See Blount v. Stroud*, 915 N.E.2d 925, 948 (Ill. Ct. App. 2009) ("[T]he first amendment right to petition and the *Noerr-Pennington* doctrine do not provide a defendant with additional protection from liability for defamation."); *White v. Ashland Park Neighborhood Ass'n, Inc.*, No. 2008-CA-001303-MR, 2009 WL 1974750, at *8 (Ky. Ct. App. 2009) (noting that, while Kentucky common law may protect defamatory communications, the *Noerr-Pennington* doctrine does not automatically do so); *Sturgeon v. Retherford Publ'ns, Inc.*, 987 P.2d 1218, 1225–26 (Okla. Civ. App. 1999) ("[E]ven though an individual's motive or purpose in attempting to influence public action may be deemed irrelevant and immune from attack, the words that the individual uses in trying to accomplish the purpose are not automatically protected if those words are false and defamatory. This rule applies to First Amendment rights generally, as well."); *Clark v. Jenkins*, 248 S.W.3d 418, 433–34 (Tex. Ct. App. 2008) (declining to apply the "sham exception" doctrine of *Noerr-Pennington* and stating that it has no application to defamatory statements made by a person exercising their right to petition); *Carolinas Cement Co. v. Riverton Inv. Corp.*, 53 Va. Cir. 69 (2000) ("The *Noerr-Pennington* doctrine is not a defense to a defamation action."); *Akhmetshin v. Browder*, 993 F.3d 922, 966–67 (D.C. Cir. 2021) (noting that, "while the doctrine is rooted in First Amendment law, it rests ultimately upon a recognition that the antitrust laws, tailored as they are for the business world, are not at all appropriate for application in the political arena" and rejecting the invitation to apply the doctrine to common law torts, like defamation (internal quotation marks and citations omitted)); *Kinsman v. Winston*, No. 6:15-cv-696-Orl-22GJK, 2015 WL 12839267, at *7 (M.D. Fla. Sept. 15, 2015) ("*Noerr-Pennington* does not immunize petitioning activity consisting of false

17

statements made to the government."); *Addison v. Baker City*, 258 F. Supp. 3d 1207, 1242 (D. Or. 2017) (holding that alleged defamatory conduct was not protected under *Noerr-Pennington*); *McFarlin v. Gormley*, No. CV-06-1594-HU, 2008 WL 410104, at \*10 (D. Or. Feb. 12, 2008) ("While *Noerr-Pennington* protects a citizen's attempts to influence governmental decision-making, it does not shield alleged defamatory statements made during that petitioning."); *In re IBP Confidential Bus. Docs. Litig.*, 755 F.2d 1300, 1313–14 (8th Cir. 1985) ("We believe extending absolute immunity to all communications made in the course of petitioning the government, whether or not such communications were made in the confines of an actual proceeding, is unwarranted by the *Noerr-Pennington* doctrine and also unwise."); *S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, 752 F. Supp. 2d 85, 121 (D. Mass. 2010); *Valencia v. Bd. of Regents, Univ. of N.M.*, No. 1:17-cv-509-RB-SCY, 2019 WL 5698169, at \*13 (D.N.M. Nov. 4, 2019); *Chevalier v. Animal Rehab. Ctr., Inc.*, 839 F. Supp. 1224, 1236 (N.D. Tex. 1993) (declining to extend *Noerr-Pennington* immunity to defamation claims); *Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*, 766 F. Supp. 2d 1122, 1145–46 (W.D. Wash. 2011) ("The competing concerns underlying *Noerr-Pennington* immunity and its exceptions would not be served by eliminating liability for false statements made to entities not parties to the litigation.").

We agree with the position taken by these sister courts and decline to apply the *Noerr-Pennington* doctrine to common law defamation claims. As applied by the United States Supreme Court and the Ninth Circuit, the doctrine only applies to *statutory* causes of action that restrain citizens from exercising their rights under the Petition Clause. The Supreme Court has held that, when it comes to *common law* causes of action, there is no absolute immunity for defamatory statements made in the course of protected petitioning activity. *McDonald*, 472 U.S. at 485. Application of the *Noerr-Pennington* doctrine to Boren's common law defamation claim would therefore run afoul of the Supreme Court's decision in *McDonald*. Thus, we decline to apply the *Noerr-Pennington* doctrine in this case.

Nor are we persuaded that the Idaho Constitution provides greater constitutional protection for petitioning activity than the First Amendment. Article I, section 10 of the Idaho Constitution provides the right of assembly:

> The people shall have the right to assemble in a peaceable manner, to consult for their common good; to instruct their representatives, and to petition the legislature for the redress of grievances.

Immediately prior to that section is Article I, section 9, which provides for freedom of speech:

> Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty.

Reading these two sections together, we conclude that, while citizens are guaranteed the right to petition the legislature for redress of grievances, they are responsible for any abuses committed in the exercise of that right. Petitioning the legislature for redress of grievances necessarily involves the exercise of speech. Our constitution specifically provides that citizens are liable for abuses of that free speech right. Gadwa and Michael have not cited to any authority suggesting that sections 9 and 10 should not be read together, or that the petitioning language in section 10 is exempt from the abuse language in section 9. In the absence of any constitutional history to the contrary, we decline to hold that the Idaho Constitution provides greater protections for petitioning activity than the United States Constitution.

To summarize, there is no absolute immunity for defamatory statements made in the course of protected petitioning activity under the United States or the Idaho constitutions. We also decline to extend the *Noerr-Pennington* doctrine to common law claims for defamation. We therefore hold that the district court erred in dismissing Boren's defamation claims on the basis that Gadwa and Michael were entitled to absolute immunity under the petitioning clause of the First Amendment and Article I, section 10.

### 6. *The district court properly dismissed the conspiracy claim.*

The district court also dismissed Boren's civil conspiracy claim on the basis that it was not a viable claim. Boren conceded this issue in his reply brief. We therefore affirm the dismissal of Boren's conspiracy to commit defamation claim. *See also Taylor v. McNichols*, 149 Idaho 826, 844, 243 P.3d 642, 660 (2010) ("Civil conspiracy is not, by itself, a claim for relief." (citation omitted)).

### 7. *The district court properly dismissed Boren's claim for declaratory judgment.*

The district court granted Gadwa's and Michael's motion to dismiss Boren's claim for declaratory judgment after concluding that the requested judgment "would not terminate the uncertainty or controversy." Boren argues that the district court erred in dismissing his claim for declaratory relief. Gadwa and Michael argue that Boren's claim for declaratory relief seeks an advisory opinion and does not meet the requirements for seeking declaratory relief.

Idaho Code section 10-1201 provides that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." "An important limitation upon this jurisdiction is that, 'a

19

declaratory judgment can only be rendered in a case where an actual or justiciable controversy exists.'" *Wylie v. State, Idaho Transp. Bd.*, 151 Idaho 26, 31, 253 P.3d 700, 705 (2011) (citation omitted). "However, a court may refuse to render a declaratory judgment or decree if the judgment would not terminate the uncertainty or controversy giving rise to the proceeding." *Idaho Branch, Inc. of Associated Gen. Contractors of Am., Inc. v. Nampa Highway Dist. No. 1*, 123 Idaho 237, 240, 846 P.2d 239, 242 (Ct. App. 1993) (citing I.C. § 10-1206).

Here, Boren's claim for declaratory relief was properly dismissed because a declaratory judgment would not terminate the uncertainty or controversy giving rise to his claims against Gadwa and Michael. Boren seeks a declaratory judgment that four of Gadwa's and Michael's statements are false and defamatory: (1) that "BOREN has illegally constructed an airport or airstrip on his property;" (2) that "BOREN's use of his pasture as a landing area was unlawful;" (3) that "BOREN needed permits or permission from Custer County or the [United States Forest Service] in order to land his aircraft on his pasture;" and (4) that "BOREN intentionally misled government officials into believing that he was building an irrigation system on his pasture, when in fact he was constructing an airstrip." However, Boren does not seek any affirmative relief connected to his claim for declaratory relief. In the absence of any affirmative relief, the declaratory judgment would have no effect on the parties. It would not resolve the controversy between the parties. We therefore affirm the district court's decision dismissing Boren's cause of action for declaratory relief.

## C. The district court erroneously concluded that Boren's Second Amended Complaint would be futile.

The district court concluded that Boren's proposed Second Amended Complaint and Demand for Jury Trial ("Second Amended Complaint") added more specificity to his claims, but that the amendment would ultimately be futile because the Second Amended Complaint would be dismissed for the same legal reasons as the first amended complaint. Boren argues that the district court abused its discretion in denying his motion because it erred in dismissing the first amended complaint. Gadwa and Michael argue that the district court did not err.

This "Court reviews a trial court's decision to grant or deny a motion to amend the pleadings for an abuse of discretion." *Zeyen v. Pocatello/Chubbuck Sch. Dist. No. 25*, 165 Idaho 690, 694, 451 P.3d 25, 29 (2019) (citation omitted). "Upon determination that a trial court has abused its discretion . . . the appropriate remedy is to remand the case for reconsideration in light

of the correct legal standard." *H2O Env't, Inc. v. Farm Supply Distribs., Inc.*, 164 Idaho 295, 300, 429 P.3d 183, 188 (2018) (internal quotation marks and citation omitted).

For the reasons discussed above, we conclude that the district court erred in dismissing the majority of the first amended complaint. As such, the district court erred when it concluded that any amendments in the Second Amended Complaint would be futile. We therefore reverse the district court's decision denying Boren's motion to amend and remand for further proceedings consistent with this opinion.

**D.  We decline to disqualify the district judge on remand.**

Boren argues that this Court should disqualify the district judge on remand because the judge's ruling ignored binding precedent on several issues and because Michael has publicly discussed the ruling in a way that suggests that the district judge supports her position. Boren then invokes Rule 2.11 of the Idaho Code of Judicial Conduct, which provides that a judge should "disqualify" himself in any proceeding in which the judge's impartiality might be reasonably questioned, including whether the judge has a personal bias or prejudice concerning a party. Idaho Code of Jud. Conduct 2.11(A)(1). Putting these together, Boren argues that the judge's rulings, as well as Michael's depiction of those rulings, suggest that the judge's impartiality may be reasonably questioned. Gadwa and Michael argue that we should not disqualify the district judge on remand because Boren never raised the disqualification issue below and, even if the issue is not waived, the district judge was not biased or prejudiced.

"Idaho Rule of Civil Procedure 40(b) provides four bases upon which a judge can be disqualified for cause." *Wiseman v. Rencher*, ___ Idaho ___, ___, 553 P.3d 948, 952 (2024). Specific to this case, the rule "provides that a party can disqualify a judge for cause if 'the judge is biased or prejudiced for or against any party or the subject matter of the action.'" *Id.* (quoting I.R.C.P. 40(b)(1)(D)). "[U]nless there is a demonstration of 'pervasive bias' derived either from an extrajudicial source or facts and events occurring at trial, there is no basis for judicial recusal." *Id.* (alteration in original) (quoting *Athay v. Rich County*, 153 Idaho 815, 820, 291 P.3d 1014, 1019 (2012)). "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge[.]" *Hall v. State*, 172 Idaho 334, 367, 533 P.3d 243, 276 (2023) (alteration in original). Further, mere legal errors on the part of a district judge alone do not support a conclusion that he is clearly biased or prejudiced. *See Wiseman*, ___ Idaho at ___, 553 P.3d at 953.

This Court has held that, "[i]n the absence of a motion for disqualification, this Court will not review that issue on appeal[.]" *Minor Miracle Prods., LLC v. Starkey*, 152 Idaho 333, 337, 271 P.3d 1189, 1193 (2012) (citation omitted). This is because whether a judge chooses to recuse himself or herself is a matter of discretion. *Id.* (citation omitted). That said, the Court has been willing to recuse a district judge on remand if the record demonstrates clear bias or prejudice. *See Beebe v. N. Idaho Day Surgery, LLC*, 171 Idaho 779, 793, 526 P.3d 650, 664 (2023) (disqualifying district judge based on "clear bias" despite issue not being raised below); *Idaho State App. Pub. Def. v. Fourth Jud. Dist. Ct.*, 173 Idaho 140, ___, 540 P.3d 311, 329 (2023) (disqualifying district judge in an original action).

Here, the district court erred in dismissing some of Boren's claims. Standing alone, those errors do not warrant recusal for actual bias or prejudice. *See Plasse v. Reid*, 172 Idaho 53, 65, 529 P.3d 718, 730 (2023) ("An adverse ruling, on its own, is insufficient evidence of bias."). The district court construed Boren's defamation claims as retaliation for Gadwa's and Michael's exercise of constitutionally protected petitioning activity. The district court construed the law as providing absolute protection for the exercise of constitutionally protected activity. However, for the reasons discussed above, we conclude that the district court erroneously construed the law. This legal error alone is not evidence of bias or prejudice. *See Wiseman*, ___ Idaho at ___, 553 P.3d at 953. Boren has not pointed to any other evidence of bias or prejudice on the district judge's part. Moreover, Idaho Rule of Judicial Conduct 2.11 does not mandate disqualification but instead leaves it in the discretion of the district judge. The record does not reflect evidence that the district judge is biased or prejudiced against Boren, and we therefore decline to disqualify the district judge on remand.

### E. The district court did not err in denying Michael's motion for attorney fees.

Michael cross-appeals and argues that the district court erred in denying her motion for attorney fees pursuant to Idaho Code section 12-121. Section 12-121 provides that attorney fees may be awarded to the prevailing party when "the case was brought, pursued or defended frivolously, unreasonably or without foundation." The district court concluded that Michael was the prevailing party, but it declined to award section 12-121 fees because the case "presented a novel legal issue that is not fully developed in Idaho."

Our decision today reverses the district court's decision dismissing Boren's claims and remands the matter for further proceedings. Because we are remanding for further proceedings,

we leave the determination of prevailing parties and entitlement to attorney fees for the district court on remand.

**F. Gadwa and Michael are not entitled to attorney fees on appeal.**

Gadwa and Michael request attorney fees on appeal pursuant to Idaho Code section 12-121. Again, section 12-121 provides that attorney fees may be awarded to the prevailing party when "the case was brought, pursued or defended frivolously, unreasonably or without foundation." Boren succeeded on a majority of issues presented on appeal. Gadwa and Michael are not the prevailing parties on appeal and thus are not entitled to attorney fees pursuant to section 12-121.

## V. CONCLUSION

For the reasons stated above, the decision of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We decline to award any party costs on appeal.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.